Nos. 35,616, 35,636

John Picou, *Appellee* and *Cross-appellant,* v. Kansas City Public Service Company, *Appellant.*

(134 P. 2d 686)

Opinion filed March 6, 1943.

*Edward M. Boddington,* of Kansas City, argued the cause, and *Fred Robertson, J. O. Emerson,* both of Kansas City, and *Charles L. Carr,* of Kansas City, Mo., were on the briefs for the appellant.

*Joseph Cohen,* of Kansas City, argued the cause for the appellee.

The opinion of the court was delivered by

Parker, J.: This action was for damages for personal injuries alleged to have been sustained by plaintiff as a result of having slipped on some foreign object, allegedly a banana peeling, while he was a passenger on a streetcar owned and operated by defendant.

Pleadings of the parties were not in issue. All we need say with respect to them is that the petition was sufficient in form and stated a cause of action for damages based on the negligence of defendant.

The answer contained a general denial and properly pleaded contributory negligence. The reply was a general denial.

The facts as disclosed by the record are that on February 1, 1939, the defendant was and for some time prior thereto had been a common carrier, engaged in the business of operating a streetcar system. On January 31, 1939, at 11:54 p. m. a 33d and Parallel streetcar, west bound toward Kansas, in charge of one of the defendant's operators, left the east end of defendant's line at 27th and Denver, Kansas City, Mo., and from there proceeded to 12th and Woodlawn, where it was boarded (exact hour not apparent from the record) by the plaintiff as a passenger. From there it moved to 12th and Washington, at which point at about 12:24 a. m. on February 1, 1939, this operator was relieved by another who continued in charge until the car reached the Kansas line, and was in charge at about 12:40 a. m. when plaintiff suffered his injury at 5th and Minnesota, Kansas City, Kan.

The plaintiff claims a period of forty minutes elapsed from the time he boarded the car until he left it; that the banana peeling on which he slipped was black and dry around the edges; that when he entered the car he and a friend sat down in the third seat from the rear and remained there; that no one sat in the two or three seats ahead of him; that no one was seen to bring a bundle, package or sack into the car and no one was seen to be eating or peeling bananas; and that as he left his seat he took one step and slipped on a banana peeling. As to most of these claims the evidence was conflicting, but for purposes of determination of these appeals we will accept plaintiff's version as to each and all of the facts and treat them as undisputed. We also concede his position there was no evidence tending to show contributory negligence.

It is not necessary for us to attempt to abstract the mass of evidence offered in support of other facts relied upon by the parties. It suffices to say, that if there was sufficient evidence to place responsibility on defendant for the object which caused plaintiff to slip and fall, there was, as to the manner in which the injury occurred, the extent of the injury and the damages suffered, adequate testimony, although disputed, to justify its submission to a jury for consideration and determination.

With this in mind, we have carefully searched the record to ascertain the time when the banana peeling was first observed by any witness and find that plaintiff and the friend who boarded the car

with him—who, incidentally, were the only witnesses who claimed to have observed such an object in the streetcar—each stated they saw nothing resembling a banana peeling prior to the time plaintiff slipped and fell and that it was not until after the accident when defendant was helped to his feet, that they, or either of them, saw portions of a banana peeling on the floor of the aisle of the car near the seat plaintiff had been occupying.

On this evidence the trial court submitted this case along with special questions and in due time the jury returned a general verdict in favor of plaintiff together with its special answers.

In view of the conclusions reached and hereafter announced, it is not necessary to devote much time to the verdict or to these special questions and findings. They are, however, of interest in that they confirm our conclusions and will be briefly referred to. In the interest of brevity it can be said that the answers to all of the questions were in line with plaintiff's version of the entire situation, and supported the verdict returned in his favor. However, three of the questions and the answers thereto challenge our attention and are of such importance we feel they should be set out in full in this opinion:

"Q. No. 3: If you answer Questions 1 and 2 in the affirmative, then state whether or not the banana peel had remained in the aisle for such a length of time prior to the time plaintiff slipped that defendant's operator could have or should have removed it from the aisle before plaintiff slipped. A. Yes.

"Q. No. 4: If you answer Question No. 3 in the affirmative, then state, (a) How long the banana peel had remained in the aisle before plaintiff slipped; and (b) What facts and circumstances were present which would impute knowledge to defendant's operator? A. (a) Prior to the time the car left 27th and Denver. (b) We do not think the proper inspection was made.

⋅  ⋅  ⋅  ⋅  ⋅  ⋅  ⋅  ⋅  ⋅  ⋅  ⋅  ⋅  ⋅

"Q. No. 10: If you find for plaintiff, then state specifically what act or acts of negligence defendant was guilty. A. Neglect of inspection of car."

At the conclusion of plaintiff's testimony the defendant demurred to the evidence on the ground it was insufficient to constitute a cause of action. Ruling on this demurrer was deferred and the trial proceeded. Later this demurrer was overruled. At the close of all testimony defendant renewed its demurrer, and specifically called the court's attention to the following:

"That the plaintiff has wholly failed to show the length of time that the alleged object was on the floor of the streetcar and as a result of that has wholly failed to prove wherein the defendant or its operator had an oppor-

tunity with the highest degree of care in the practical operation of the street-car to know and remove any foreign object from the floor."

This demurrer was also overruled.

Thereafter, defendant moved for a directed verdict for the reason that under all the evidence the defendant was entitled to judgment. This motion was likewise overruled, and the cause submitted to the jury with the result hereinbefore set forth.

Thereafter, and on March 5, 1942, defendant appealed from the trial court's order overruling defendant's demurrer at the close of plaintiff's evidence, and overruling defendant's demurrer and request for an instructed verdict at the close of all the evidence. An objection to its order in overruling defendant's motion for judgment on the opening statement of counsel was made and included in the notice of appeal but will not be reviewed because omitted from the specification of errors.

The foregoing statement covers all facts required to enable us to determine the questions raised on defendant's appeal, case No. 35,-616, in this court.

Insofar as case No. 35,636 is concerned the following additional facts appear from the record: After rendition of the jury's general verdict on January 8, 1942, the defendant filed its motion to vacate the verdict and answers to special questions, and for a new trial, the important portions of which for our purpose charged erroneous rulings of the court on the demurrers to the evidence, and the motion for a directed verdict, and that the verdict and answers to all of the special questions were in whole or in part not supported by the evidence and were contrary to the evidence. For some reason this motion did not come up for hearing until March 7, 1942, which was two days after the appeal in case No. 35,616 was perfected.

After hearing the motion for new trial the trial judge took it under advisement until March 11, 1942, on which date he rendered a written decision granting defendant a new trial, sustaining the motion insofar as it pertained to his former rulings on the demurrers to the evidence and the motion for a directed verdict and vacating the answers to special questions 3, 4 and 10 (hereinbefore set forth *in toto*) on the ground they were "in whole or in part not supported by the evidence and are contrary to the evidence." From this ruling plaintiff appeals.

Thus, it will be observed we are now placed in the unusual position of having to review two separate and distinct appeals (now consoli-

dated by order of this court), based on proceedings had in the same identical case in district court, under conditions when, whatever be, the decision, we must reverse rulings made by the trial court in the case below. The uniqueness of the situation has impelled us to devote unusual time and space to an explanation of the issues involved.

So much for the facts. We now give our attention to the legal problems necessarily involved in the determination of the appeal in No. 35,616.

At the outset it must be admitted by all parties that appellant's demurrers to the evidence and its motion for a directed verdict raise but a single question the answer to which will establish the propriety or impropriety of the trial court's ruling on each.

The established rule is that a carrier of passengers for hire, including a street-railway company, is required to use the greatest skill, care and foresight practicable for safety of its passengers in the preparation and management of the means of conveyance—in this case a streetcar—it furnishes for that purpose. (*Kennedy v. Railways Co.*, 114 Kan. 853, 221 Pac. 249; *Railway Co. v. Hanson*, 67 Kan. 256, 72 Pac. 773; *Clark v. Southwestern Greyhound Lines*, 148 Kan. 155, 79 Pac. 2d 906; *Cloud v. Traction Co.*, 103 Kan. 249, 173 Pac. 338; *Lynch v. Railway Co.*, 92 Kan. 735, 142 Pac. 938.)

It is not, however, an insurer of the safety of its passengers. (*Cloud v. Traction Co.*, supra; *Miller v. Kansas City Public Service Co.*, 136 Kan. 288, 291, 15 P. 2d 453; *Lowden v. Denton*, 110 F. 2d 274; *Belder v. Omaha & C. B. Street R. Co.*, 132 Nebr. 415, 272 N. W. 220.)

The degree of care, skill and foresight required by the general rule as herein stated, insofar as it applies to foreign objects such as a banana peeling in the aisle of a streetcar, does not mean that a carrier is liable for all injuries resulting from a passenger slipping upon and falling because of them. As to such an object the applicable rule is that the carrier is not liable unless its employees placed the object there, knew of its presence, or it had been there such a length of time before the accident as would impute notice to the carrier. (13 C. J. S. 1400; 10 Am. Jur. 224; *Belder v. Omaha & C. B. Street R. Co.*, supra; *Livingston v. Atlantic Coast Line R. Co.* [C. C. A.], 28 F. 2d 563; *Jones v. St. L.-S. F. Ry. Co.*, 222 Mo. App. 1220; 5 S. W. 2d 101; *Tevis v. United Rys. Co. of St. Louis*, [Mo. App.] 185 S. W. 738.)

Strange as it may seem, our search of Kansas cases discloses that in over eighty years of appellate review this court has not had occasion to pass upon the liability of a streetcar company in a case wherein the negligence alleged was a banana peeling in a car aisle and proof of the length of time the object had remained there was based on its condition and color. Cases of this kind have been more or less frequent in other states and we have found them helpful in our determination of the one under consideration.

*Morrison v. Pacific Northwest Public Service Co.*, 146 Ore. 225, 30 P. 2d 334, was an action against a streetcar company to recover damages for injuries caused by slipping on some foreign substance on the floor of the front vestibule of defendant's car. The testimony of plaintiff was that he did not see the object until after he fell, but did so then, and it looked like "an old banana peeling, one that was over-ripe." His companion testified that: "There was a soft substance, looked like a banana peeling or could have been a plum." "It was black and slippery looking," "It didn't look very fresh." In the face of this evidence the trial court overruled defendant's motion for a directed verdict, and on appeal held this evidence as to appearance of the object was not evidence of the time it had been in the aisle, did not prove defendant's negligence, and the trial court was instructed to enter judgment for defendant.

Other interesting decisions in point and denying plaintiff damages for injuries resulting from slipping on a banana peeling while alighting from a streetcar, based on the premise the evidence failed to show how long the peeling had been in the car, or whether defendant's employees had had a reasonable opportunity to discover it, are *Belder v. Omaha & C. B. Street R. Co.*, supra; *Tevis v. United Rys. Co. of St. Louis*, supra; *Benson v. Manhattan Ry. Co.*, 65 N. Y. Supp. 271.

*Windham v. Atlantic Coast Line R. Co.*, 71 F. 2d 115, was a personal injury action by a passenger who slipped on a banana peel in the aisle of a coach, where evidence as to negligence of the railroad was held to be insufficient for submission to a jury. In its opinion the court said:

"Appellant concedes that liability is not made by proof merely that a passenger slips upon or stumbles over some obstruction of foreign substance in the aisle of a railroad coach. She recognizes that the proof must also bring home to the carrier complicity in or timely knowledge of its presence there, or must at least show that it had been there long enough for the carrier, in the exercise of reasonable care, to have discovered and removed it. (*Living-*

ston v. A. C. L. R. R. Co. (C. C. A.) 28 F. (2d) 563; Long v. A. C. L. R. R. Co. (C. C. A.) 238 F. 919; Gulf C. & S. F. R. Co. v. Blackmon (Tex. Civ. App.) 56 S. W. (2d) 199; Alabama Great Southern R. Co. v. Johnson, 14 Ala. App. 558, 71 So. 620; Hotenbrink v. Boston Elevated R. Co., 211 Mass. 77, 97 N. E. 624, 39 L. R. A. (n. s.) 419.) She argues, however, that though there is no evidence at all as to' how the peel got in the aisle, and no direct evidence as to how long it had been there, there are circumstances which would support a jury finding that it had been in the aisle long enough to have been discovered had due care been exercised. These circumstances are: The small size and black color of the peel, making for its lying on the floor indefinitely escaping casual notice, though readily discoverable and removable by careful inspection and sweeping; the testimony that no bananas had been seen in the car or on the train during the morning's journey before the accident, and the testimony of plaintiff's witness that there was no grit on the peel such as would supposedly have been there had it been tracked in from the outside." (p. 115.)

Similar cases, except for the detailed description of the banana peeling and involving liability of railroads who assume the same responsibility as streetcar companies for the protection of passengers riding in their coaches are to be found in: *Livingston v. Atlantic Coastal Line R. Co.,* supra; *Jones v. St. L.-S. F. Ry. Co.,* 222 Mo. App. 1220, 5 S. W. 2d 101.

In the instant case it is contended that the evidence as to the aged condition of the banana peeling in question indicated it had been there for some time and, standing alone, was sufficient to impute knowledge to the plaintiff and justify the action of the trial court in submitting that issue. Also, to uphold special answers 3, 4 and 10 as returned by the jury.

In this respect, in addition to the foregoing cases, even though the rule as to carrier of passengers is not applicable to a storekeeper, it is interesting to note *Newell v. Wm. Filene's Sons Co.,* 296 Mass. 489, 6 N. E. 2d 820, wherein it was held:

"Evidence that half of orange upon which prospective customer slipped on stairs in defendant's store was black, dirty, and gritty and had heel marks on it, held insufficient to show that orange had been on stairs for such length of time that defendant's employees were negligent in not learning of its presence, precluding customer's recovery for injuries sustained when she slipped." (6 N. E. 2d 820, headnote 2.)

Also, *Edwards v. F. W. Woolworth Co.,* 129 Conn. 245, 27 A. 2d 163, holding:

"Evidence was insufficient to entitle customer to recover from store owner for injuries allegedly sustained when she slipped on frankfurter skin and fell, where there was no evidence from which jury could have reasonably con-

cluded that skin had been on floor in a position to cause danger to customers a sufficient length of time that owner should in exercise of a reasonable inspection have discovered it." (27 A. 2d 163, headnote.)

Interesting in the extreme and purposely omitted in the preceding references are cases considered by the Supreme Judicial Court of Massachusetts, which in our opinion are worthy of special recognition.

In *Anjou v. Boston Elevated Railway*, 208 Mass. 273, 94 N. E. 386, an action for injury to a passenger on an elevated railroad, by slipping on a banana peel on the carrier's station platform, the evidence describing the peel was as follows:

". . . 'It felt dry, gritty, as if there were dirt on it,' as if 'trampled over a good deal,' as 'flattened down, and black in color,' 'every bit of it was black, there wasn't a particle of yellow,' and as 'black, flattened out, and gritty,' . . ."

In the decision in that case it was held such evidence authorized an inference that the peel had not been dropped a moment before by a passenger, and consequently furnished evidence of negligence of the carrier's employee at the station, whose duty included the observing and removing of anything on the platform interfering with the safety of passengers. On first blush this decision might seem to be authority for appellee's contention. However, an examination of subsequent Massachusetts cases discloses the contrary.

In *O'Neill v. Boston Elevated Railway*, 248 Mass. 362, 142 N. E. 904, it was held:

"Evidence that apple core in aisle of trolley car was black did not constitute evidence of negligence on the part of the carrier, there being no evidence as to the length of time it had been there." (142 N. E. 904, headnote 1.)

Later in *Sisson v. Boston Elevated Railway*, 277 Mass. 431, 178 N. E. 733, the same court ruled that evidence that passenger slipped on a crushed apple on busy subway stairway was insufficient to create a jury case. In the opinion it was said:

"It is a matter of common knowledge that large numbers of people would be passing over these stairs on a week day at about the time of the plaintiff's injury. If the substance described had been dropped or left where it was by a person passing over the place a moment before it might have presented the appearance described. It may have been flattened by people stepping upon it before it first appeared upon the step or this result may have been caused in a moment by people passing over the stairway. Whether it was made to adhere to the metal step by the pressure of many feet or by that of a single step upon it or even by the plaintiff himself when he slipped upon it was a matter of conjecture. The evidence did not warrant a finding that the sub-

stance on which the plaintiff slipped had been on the step so long that it should have been discovered and removed by the employee of the defendant who had the duty to keep the stairway clean. The facts of this case bring it within the authority of . . . (Citing cases) . . . and distinguished it from cases like *Anjou v. Boston Elevated Ry.,* 208 Mass. 273, where there was evidence that the banana peel upon which the plaintiff slipped looked as though it had been trampled upon a great deal, and *Hudson v. F. W. Woolworth Co.,* 275 Mass. 469, in which the evidence tended to prove that when the substance causing the injury was scraped off the floor the place under it was clean while the floor around that place had dirt upon it." (p. 432.)

To the same general effect is *Renzi v. Boston Elevated Railway,* (two cases) 293 Mass. 228, 199 N. E. 738, where the plaintiff testified she was unable to rise after her fall on a stairway but that she looked and for the first time saw a bag and a lot of fruit scattered over the stairs, marked by foot tracks in a dried and dirty condition. Likewise, the later case of *Mascary v. Boston Elevated Railway,* 258 Mass. 524, 155 N. E. 637.

And, more recently in *Smail v. Jordan Marsh Co.,* 309 Mass. 386, 35 N. E. 2d 221, where this same court held:

"Evidence that candy, on which customer in defendant's store slipped on a platform under defendant's control, was dirty and that floor around candy at the place of the skid mark was dirty, and that floor under candy was clean, was insufficient to show that candy had been on floor a sufficient length of time to enable defendant in exercise of due care to discover and remove candy, precluding customer's recovery for injuries sustained when she slipped." (Headnote, 35 N. E. 2d 221.)

And in the opinion said:

"The plaintiff contends that her testimony brings this case within the authority of cases like *Anjou v. Boston Elevated Railway,* 208 Mass. 273, 94 N. E. 386, 21 Ann. Cas. 1143, and more particularly, *Hudson v. F. W. Woolworth Co.,* 275 Mass. 469, 176 N. E. 188, where significance was attached to evidence that the floor was clean under the offending substance but dirty around it as aiding in the drawing of an inference that the substance had been upon the floor a sufficient length of time to enable the defendant in the exercise of due care to discover and remove it. . . . The difficulty with this contention is that upon cross examination of the plaintiff it appeared that her observation of the floor under the candy was limited to the place where the 'skid mark' was . . . This case must be distinguished from the cases upon which the plaintiff relies and must be classed with such cases as *O'Neill v. Boston Elevated Railway* . . . (here follow citations of numerous cases) . . ." (p. 221.)

Thus, it will be noted the rule in Massachusetts, which we approve, is in general accord with that announced in other cases here cited. Observe also that in the case at bar there was absolutely no

testimony offered as to the condition of the floor under the banana peel when and where appellee stepped and slipped upon it.

Abstracting the evidence on behalf of plaintiff, and his one witness, on this particular point, in its most favorable aspect, what do we find? Simply this and nothing more. That from 27th and Denver to 12th, and Woodlawn to 12th and Washington, through a busy street of a large city, in a sister state, on across the Kansas line to 5th and Minnesota, in Kansas City, Kan., and until after appellee had slipped and injured himself, no one saw a banana peeling, or any sign of bananas on the car or in the aisle thereof; that after the injury two witnesses saw a banana peeling at or near the place where appellee slipped which was dark or black in color and dry around the edges; that it was coiled up and shriveled up; and that during all of the time appellee was a passenger on the car—about forty minutes—the appellant's operator made no inspection of its condition.

In a ruling on a demurrer to evidence, all competent evidence must be accepted as true, and reasonable inferences to be drawn therefrom must be indulged in favor of the party adducing it. (*Myers v. Shell Petroleum Corporation,* 153 Kan. 287, 110 P. 2d 810.) The same is true of a ruling on a motion for a directed verdict. (*Mosley v. Unruh,* 150 Kan. 469, 95 P. 2d 537.) And, ordinarily there is no difference between the two. (*Eckl v. Brennan,* 150 Kan. 502, 95 P. 2d 535.)

Using the decisions cited as a yardstick to measure appellee's testimony herein abstracted in the light most favorable to him and giving him the benefit of all reasonable inferences to be drawn therefrom, can it be held that the banana peeling causing him to slip, fall and injure himself had been in the streetcar such a length of time before the accident as to impute notice to appellant? We think this question must be answered in the negative.

The evidence fails to show when the banana peeling was placed in the aisle, how long it had been there before the accident, where it came from, or any other evidence, unless it be the fact that during the forty minutes appellee was on the car the operator failed to make any effort to inspect it, from which it could be said they had an opportunity to notice the presence of such object and remove it or were negligent in not discovering and removing it. As to inspection it goes without saying that a streetcar company is not required to keep up a continuous inspection of its cars. It is a matter of com-

mon knowledge that 12th street in Kansas City, Mo., is one of the main streets of that thriving metropolis. When the car changed operators at 12th and Washington both operators had something to do, the one who was being relieved to get off the car immediately so that it would not interfere with traffic, the other to start the car and see that it was operated without imperiling the life and limb of others who also had the right to travel the busy street. This is especially true where the peril to be apprehended from such a cause was certainly under the evidence not a peril to be reasonably expected. True, in an attempt to fill the gap as to the length of time the peeling had been in the aisle appellee described its condition, but, as has been seen, the color, shape or condition of the object does not warrant the inference it had been in the aisle any given length of time or justify a holding that appellant's employees were negligent in not finding it there. For that matter it does not appear that prior to the fall the peeling was in such a place that they should or could, in the exercise of proper care, have seen and removed it in time to have avoided the accident, for not a single passenger on the car—not even the appellee—saw it until after appellee fell. Moreover, for all we know, the peeling could have come into the aisle in one of many different ways at or after the time he boarded the car. It is possible it was brought in on his shoe, on the shoe of his friend, it might have been dropped by passengers getting on or off, or it could have been under the seat and scraped into the aisle by his feet when he started to leave the car. We realize there was no evidence as to these suggested causes and that conjecture cannot bind the appellee, but neither can it be used to fasten an obligation based on negligence upon the appellant.

We believe after careful consideration of all the evidence, giving it all the reasonable inferences that could possibly be drawn therefrom, it was not sufficient to prove negligence on the part of appellant; it failed to establish a cause of action in favor of appellee and against appellant, and the demurrers to the evidence should have been sustained by the trial court.

Although not persuasive of the conclusion just announced, it is interesting to note that after the court had overruled the demurrers and the motion for a directed verdict the jury in response to special questions 3, 4 and 10 returned answers which would not permit the verdict to stand on the motion for a new trial, there being absolutely no competent evidence as to how long the peeling had remained in

the aisle, no evidence as to its being there prior to leaving 27th and Denver, and no evidence the car had not been inspected at that point, which was the end of the 33d and Parallel streetcar line.

Appellant claims that in attempting to establish his cause of action, there being no direct testimony to prove the banana peeling was on the floor before the injury, appellee proved that fact by a presumption based upon circumstances, and thereafter developed another presumption by circumstantial evidence; namely, that the peeling had been in the aisle such a length of time the operator should have discovered and removed it prior to appellee's fall. It contends such action was an attempt to base one presumption upon another and that a presumption can only be based on known facts. We recognize the force of that rule as decided in *Railway Co. v. Rhoades,* 64 Kan. 553, 68 Pac. 58, and *Schmidt v. Twin City State Bank,* 151 Kan. 667, 100 P. 2d 652. However, we do not pass upon the question as raised by appellant because the conclusion heretofore reached makes it unnecessary.

We now turn to the proper disposition of these two appeals. Under the provisions of G. S. 1935, 60-3317, the appellate court may, in any case pending before it, render such final judgment as it deems justice requires, or direct such judgment to be rendered by the court from which the appeal was taken, without regard to technical errors and irregularities in the proceedings of the trial court. The trial court should have sustained the demurrers to the evidence. Irrespective of what its decision on the motion for directed verdict should have been, we are unable to give it consideration here. The denial of such a motion is not an appealable order. See *Commander-Larabee Milling Co. v. McBride,* 152 Kan. 709, 107 P. 2d 668, However, no such restriction applies to the ruling on the demurrers to the evidence. They are appealable orders and are now subject to review.

It follows from what has been said that in case No. 35,616 the judgment should be reversed and the cause remanded with instructions to enter judgment in favor of appellant and against appellee.

As to case No. 35,636, the appeal should be dismissed, the decision in case No. 35,616 making a determination of the issues there involved unnecessary and futile. It is so ordered.